**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**JOSEPH LANCE**,

**Plaintiff,**

**v.**                                                      **No. 14-0433-DRH**

**HUBBELL INCORPORATED, and**
**HUBBELL INCORPORATED RETIREMENT**
**PLAN FOR COLLECTIVELY BARGAINED**
**HOURLY EMPLOYEES,**

**Defendants.**

**MEMORANDUM and ORDER**

**HERNDON, District Judge:**

**I.   Introduction and Background**

Pending before the Court are cross motions for summary judgment: Plaintiff's motion for partial summary judgment (Doc. 23) and defendants' motion for summary judgment (Doc. 25).  Based on the following, the record and the applicable case law, the Court grants defendants' motion and denies plaintiff's motion.

On March 4, 2014, plaintiff Joseph Lance filed a two-count first amended complaint against defendants Hubbell Incorporated and Hubbell Incorporated Retirement Plan for Collectively Bargained Hourly Employees in the Saint Clair County, Illinois Circuit Court (Doc. 2-1).  Count 1 is for breach of contract and Count 2 is vexatious refusal pursuant to 21 ILCS 5/155.  The first amended

complaint contains a claim for disability benefits under an employer-sponsored retirement plan.   On April 14, 2014, defendants timely removed the case to this Court based on federal question jurisdiction, 28 U.S.C. § 1331, as plaintiff's claims are pre-empted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq.* (Doc. 2).   On May 9, 2014, plaintiff filed a second amended complaint against defendants containing one count under ERISA (Doc. 18).   The second amended complaint alleges that plaintiff is entitled to a benefit under the Plan for disability income; that defendants should not have deducted workers' compensation payments from any disability payment and that deductions amounted to approximately $175,000.   In addition to the $175,000 in benefits, plaintiff seeks attorney's fees, costs, and pre/post judgment interest.

On August 25, 2014, plaintiff moved for partial summary judgment (Doc. 23).   Plaintiff argues that the case has two issues: (1) the start of plaintiff's disability period and (2) whether defendants are entitled to an offset for workers' compensation benefits.   Plaintiff maintains that defendants are not entitled to an offset and thus summary judgment should be entered in his favor.   Shortly thereafter, defendants filed their motion for summary judgment (Doc. 25). Defendants argue that the Retirement Plan properly withheld plaintiff's workers' compensation benefits from his disability retirement benefit and that the Retirement Plan properly calculated the start of plaintiff's disability retirement benefit as the first month after his disability retirement date.

On September 25, 2014, the parties filed a joint stipulation (Doc. 30).   The

joint stipulation provides that the parties agree and stipulate to the following: (1) that plaintiff was terminated by Hubbell on February 3, 2012; (2) that as a result of the termination, plaintiff's retirement date, pursuant to the Plan was March 1, 2012; (3) on February 4, 2014, it was determined that plaintiff was disabled and therefore eligible for disability retirement benefits under the Plan; (4) plaintiff received disability benefits for the period from March 2012 to the present   He received a lump sum retroactive payment (with interest) for the period from March 2012 to June 2014.   Starting in July 2014, plaintiff began receiving monthly disability retirement benefits; and (5) that there are no issues of fact and that the only issue of law to be decided is that which is contained in the motions for summary judgment: whether the Plan's Retirement Committee was within its authority to deduct plaintiff's worker's compensation benefits from his disability retirement benefit.   As the motions are fully briefed, the Court turns to address the merits of the motions.

## II.   <u>Facts</u>[1]

Lance is a former Wiegmann Hubbell employee who eased his work duties for the company on September 30, 2008, though he remained employed by Hubbell.   From November 2008 to July 2013, Lance received $1,627.24 per month in workers' compensation payments. Lance settled his workers' compensation claim and received a lump sum payment of $99,890 and after attorney's fees, Lance received $79,234.91.

---

1 These facts are not in dispute and merely provide background information regarding the case.

Lance was terminated from his employment on February 3, 2012.   Prior to his termination in 2012, Lance continued to receive paid vacation, paid sick days and bonuses.   In 2009, Lance received $2,944.00 in paid vacation, $236.64 in paid sick days and a $25.00 Christmas bonus for a total of $3,205.64.   In 2010, Lance received $2,422.40 in paid vacation, $242.24 in paid sick leave and $25.00 Christmas bonus for a total of $2,689.64.   In 2011, Lance received $2,422.40 in paid vacation, $242.24 in paid sick days for a total of $2,664.64. In 2012, Lance received a total of $2,422.40 in paid vacation.   In addition, from 2010-2011, Hubbell contributed $16,667 to Lance's healthcare coverage.

On February 4, 2014, the Plan determined that Lance was eligible for disability retirement benefits under the Plan.   On June 10, 2014, Lance was paid $3,386.34, plus interest, for disability retirement benefits for the period of March 1, 2012 – June 2014.   In July 2014, Lance's regular monthly disability retirement benefit of $159.35 began.

### III.  **Summary Judgment Standard**

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would-as a matter of law-conclude in the moving party's favor and is thus unnecessary. *See* Fed. R. Civ. Pro. 56(c). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial … against the moving party." *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986).   Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch,* 593 F.3d 529, 533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. The key inquiry is the existence of evidence to support a plaintiff's claims or affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

Cross-motions for summary judgment do not automatically mean that all questions of material fact have been resolved.   *Franklin v. City of Evanston,* 384 F.3d 838, 842 (7th Cir. 2004).   The Court must evaluate each motion independently, making all reasonable inferences in favor of the nonmoving party with respect to each motion.   *Id.* at 483.

### IV.   <u>Analysis</u>

Under ERISA, judicial review of a plan administrator's benefits determination is *de novo* unless the plan grants discretionary authority to the administrator.   *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 636-37 (7th Cir. 2005).   Where a qualifying plan gives the administrator discretionary authority to determine eligibility for benefits, the court shall review the administrator's decision to deny benefits under the arbitrary and capricious

standard.   *Mote v. Aetna Life Ins.* Co., 502 F.3d 601, 606 (7th Cir.2007); *Hackett v. Xerox Corp.,* 315 F.3d 771, 773 (7th Cir. 2003). And to determine whether a plan administrator has discretionary authority, the court looks to the plain language of the plan. *Postma v. Paul Revere Life Ins. Co.,* 223 F.3d 533, 538 (7th Cir. 2000).

Here, the Court reviews the decision regarding the benefits under the arbitrary and capricious standard as the Plan clearly provides for discretionary authority.[2]   Under the arbitrary and capricious standard the Court may overturn an administrator's decision only if the decision is "downright unreasonable." *Mote,* 502 F.3d at 606.   This standard is deferential, but it is not a "rubber stamp," as the Court will not uphold a denial of benefits if the plan administrator fails to articulate specific reasons for rejecting evidence and denying the claim.   *Black v. Long Term Disability,* 582 F.3d 738, 745 (7th Cir.2009) (citing *Williams v. Aetna Life Ins. Co.,* 509 F.3d 317, 324 (7th Cir. 2007)).   The court's ultimate goal is to ensure that the plan administrator's decision has rational support in the record. *See Speciale v. Blue Cross & Blue Shield Ass'n,* 538 F.3d 615, 621 (7th Cir. 2008); *Exbom v. Central States S.E. & S.W. Areas Health & Welfare Fund,* 900 F.2d 1138,

---

2 The Plan provides in part: "The Retirement Committee shall be the Plan administrator and shall have all such powers as may be necessary to carry out the provisions…. (i) To have the discretion to construe and interpret the terms of the Plan, to determine the eligibility for benefits and the amount of benefits under the Plan.   Plan § 9.01(b) (Docs. 24-3 & 29-1).   Further, the Plan provides in part: "The Retirement Committee shall have discretionary authority to interpret the Plan and to make factual determinations (including but not limited to, determination of an individual's eligibility for Plan participation, the right and amount of any benefit payable under the Plan and the date on which any individual ceases to be a Participant).   The determination of the Retirement Committee as to the interpretation of the Plan or any disputed question shall be conclusive and final to the extent permitted by applicable law." Plan § 9.02(f) (Docs. 24-3 & 29-1).

1143 (7th Cir. 1990) (explaining that there must be a rational connection between the facts found and the administrator's decision). In making its determination, a reviewing court must consider: (1) the administrator's impartiality; (2) the complexity of the issues; (3) the process afforded the parties; (4) the extent to which the administrator utilized experts; and (5) the soundness of the administrator's rationale. *Chalmers v. Quaker Oats Co.,* 61 F.3d 1340, 1344 (7th Cir. 1995)).

As stipulated by the parties, the Court, in deciding the cross motions for summary judgment, must determine whether the Plan's Retirement Committee was within its authority to deduct plaintiff's workers' compensation benefits from his disability retirement benefit.   Plaintiff argues that Schedule H of the Plan provides that defendants should not deduct worker's compensation payments. Specifically, plaintiff maintains that Schedule H by its terms "restates" the original Plan, therefore, the original Plan's terms do not apply and that although Section 4.05 of the original Plan does allow for it to be reduced for worker's compensation payments, it does have a limitation.   The Court rejects all of plaintiff's arguments as they miss the mark.

Section 4.03 of Schedule H of the Plan reads[3]:

> For the purposes of Section 4.03 of the Plan, an Employee under this Schedule H, who (i) is actively performing his regular duties; (ii) has not attained the age 65; (iii) has not incurred a Termination of Employment; (iv) has fifteen (15) Years of Vesting Service (determined as of the last day the Participant was actively performing service); and (v) who becomes Totally and Permanently

---

[3] A review of Section 4.03 of the Plan and Section 4.03 of Schedule H reveals that the provisions are different.

Disabled and remains so disabled for a period of at six (6) consecutive months, shall be entitled to a monthly disability retirement benefit as determined under Section 4.01 of this Schedule H based upon his Years of Benefit Service accrued to date.  Years of Benefit Service shall be determined as of the Participant's disability retirement date.

While, Section 4.05 of the Plan states:

Unless the applicable Schedule with respect to a Covered Unit provides otherwise, a Participant who is entitled to a retirement or disability benefit under any company sponsored disability plan or Workers' Compensation program of an Affiliated Company to which an Affiliated Company contributes and which is attributable to a period of Credited Service for which benefits are provided under this Plan, shall have the amount of benefit that such Participant is otherwise entitled to hereunder reduced by the amount received from such other disability or Workers' Compensation program in the form of annuity based on the Actuarial Equivalent assumptions used to derive a lump sum, to be determined when actual payments under the Plan commence.

As stated previously, the Retirement Committee is entitled to deference in interpreting the Plan.   The Retirement Committee explained its reasoning at length:

The Committee previously agreed that Mr. Lance is eligible for disability benefits under Section 4.03 of Schedule H of the Plan. Schedule H contains the special provisions that apply to Mr. Lance's covered group instead of the general provisions in Section 4.03 of the Plan.

Although you correctly note that Section 4.03 of Schedule H says that an employee who meets the requirements for disability retirements *shall* be entitled to a monthly disability benefit as determined under Section 4.01 of Schedule H, the word "shall" does not mandate that the offset provisions in Section 4.05 are ignored. Instead, the Plan, like any contract, must be interpreted based on all its provisions. …

Further, the Retirement Committee explained: "the Committee cannot

disregard the application of the general Plan provision at Section 4.05 unless Schedule H specifically provides that Section 4.05 does not apply.    As you know, it does not."

The Court finds that the Retirement Committee's decision regarding the benefits in this case was within the discretion afforded to it through the Plan's provisions and was a correct interpretation of its own Plan and applicable schedules.    It is clear to the Court that Schedule H is meant to be an amendment/schedule to the Plan for certain covered employees ("Covered Unit") and not meant to constitute/replace the Plan as a whole.    Specifically, it states: "Hubbell Incorporated, a Connecticut corporation, hereby amends and restates the Hubbell Incorporated Retirement Plan for Collectively Bargained Hourly Employees as it applies to this Covered Unit."    This Schedule H did not delete Section 4.05 because it simply did not restate it in the schedule document; rather it amended the sections that were listed in the Schedule H.    By following plaintiff's logic, that because Schedule H does not repeat each and every provision of the Plan, then those provisions not listed in Schedule H do not apply or are modified by it, would defeat the purpose of Schedule H and of the Plan.    The Retirement Committee's explanation is supported by the language of the Plan and is a rational interpretation of the Plan.    Thus, the Retirement Committee properly exercised its discretionary authority to interpret the Plan as to plaintiff's benefits.

### V.   Conclusion

Accordingly, the Court **DENIES** plaintiff's motion for partial summary

judgment (Doc. 23) and **GRANTS** defendants' motion for summary judgment (Doc. 25).   The Court finds in favor of defendants Hubbell Incorporated and Hubbell Incorporated Retirement Plan for Collectively Bargained Hourly Employees and against plaintiff Joseph Lance on plaintiff's second amended complaint.   The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

   **IT IS SO ORDERED.**

   Signed this 16th day of December, 2014.

Digitally signed by
David R. Herndon
Date: 2014.12.16
08:42:00 -06'00'

   **United States District Court**